**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRUNO MARTINS FERREIRA,** | : | **No. 3:26cv2252** |
| **Petitioner** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **TODD BLANCHE, Attorney General** | : | |
| **of the United States of America, *et al.*,** | : | |
| **Respondents** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM ORDER

Before the court is a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241 filed by Bruno Martins Ferreira, a detainee in the custody of the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") at FCI-Lewisburg.[1] (Doc. 1 at 1). Petitioner asserts that his detention violates the Immigration and Nationality Act and his right to due process. (Doc. 1-1 at ECF pp. 2–3). For the reasons set forth below, the petition will be granted. The petitioner is entitled to a bond hearing before a neutral and impartial immigration judge.

---

[1] Federal district courts are authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Martins Ferreira filed the instant petition while detained at FCI-Lewisburg. (Doc. 1 at ECF p. 1). The petitioner asserts that his continued immigration detention violates the Immigration and Nationality Act and the Fifth Amendment. Thus, the court has habeas jurisdiction over the petition. Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004).

Martins Ferreira is a native and citizen of Brazil. Id. at ECF p. 2. He is 35 years old. Id. He entered the United States without inspection in September 2020 and was apprehended by United States Border Patrol Agents. Id. He was released on September 25, 2020 with a notice to appear charging him with violating 8 U.S.C. § 1182(a)(7)(A)(i)(I) as being present in the United States without required documentation. Id. Petitioner asserts that "he has been in compliance with court orders since then." Id.

According to records supplied by Martins Ferreira, on April 12, 2025, the State of West Virginia charged him with one count of first-degree robbery, threat of a deadly force with a weapon, in violation of W. VA. CODE § 61-2-12(a)(2). (Doc. 1-5 at ECF p. 3–4). Petitioner was also charged with one count of conspiracy against the state in violation of W. VA. CODE § 61-10-31. Id. Martins Ferreira indicates that he turned himself in on July 2, 2025. (Doc. 1-1 at ECF p. 2).

The above felony charges were ultimately dismissed. (Doc. 1-5 at ECF pp. 8–9). Judge Kurt W. Hall of the Circuit Court of Upshur County, West Virginia entered an order on April 1, 2026 after the prosecution advised the alleged victim refused to return to the state to testify against the petitioner and his alleged co-conspirator. Id. The prosecution also advised the court that a third alleged co-

conspirator was not in custody and the alleged victim did not want to proceed unless that person was apprehended. Id.

According to the West Virginia order, Martins Ferreira was prepared to enter a guilty plea the following week. Id. The prosecuting attorney did not believe it was fair, ethical, or in the proper administration of justice to allow a guilty plea to be entered. Id. At the state's request, Judge Hall dismissed the charges against the petitioner without prejudice and released him from the Tygart Valley Regional Jail. Id.

Upon release by West Virginia authorities, Martins Ferreira was detained by ICE at Moshannon Valley Processing Center before his transfer to FCI-Lewisburg. (Doc. 1-1 at ECF p. 2). On June 2, 2026, an immigration judge determined that petitioner was inadmissible, denied his request for cancellation of removal under 8 U.S.C. § 1229b(2), and ordered him removed to Brazil. (Doc. 6-4). Petitioner appealed that decision to the Board of Immigration Appeals. (Doc. 6-5). That appeal remains pending.[2]

---

[2] The court confirmed this information using the Executive Office for Immigration Review's case status website by inputting the petitioner's A-number and nationality. *Automated Case Information System*, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, https://acis.eoir.justice.gov/ (last visited October 16, 2026).

Petitioner contends that 8 U.S.C. § 1226(a) applies to his detention, not §§ 1225(a)(2), 1226(c), or 1231(a). (Doc. 1-1 at ECF pp. 8–11; Doc. 7). The court agrees. Before getting into why, other matters must be addressed.

Martins Ferreira filed this petition pro se with his signature. (Doc. 1 at ECF p. 8). "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C. § 1654. To be pro se "means to appear for one's self, a person may not appear on another person's behalf in the other's cause." Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998).

There is considerable evidence that Martins Ferreira did not prepare his own filings. His petition and traverse were sent for filing via FedEx priority overnight from Worldwide Legal Services, LLC in Short Hills, New Jersey. (Doc. 1 at ECF p. 10; Doc. 7 at ECF p. 23). The petition contains a 13-page "memorandum of points and authorities in support." (Doc. 1-1). That memorandum contains dozens of citations to administrative decisions, court cases, legislative materials, and *Politico*. Ferreira's traverse is 23 pages. The traverse addresses the respondents' arguments and then some.

Of particular note, the court directed the government to "specifically address whether the Laken Riley Act, 8 U.S.C. § 1226(c)(1)(E) applies to the

petitioner[.]" (Doc. 3, ¶ 7). In its 64-page response, the respondents did not do that directly. (Doc. 6). Rather, respondents assert that 8 U.S.C. § 1225(b)(2) applies to the petitioner. Id. at ECF p. 2. Any references to Laken Riley Act in respondents' brief were only to further that argument. Id. at ECF pp. 16, 42–45. The respondents' position indirectly answers the question raised by the court in the show cause order. Given that position, the court need not reach the 8 U.S.C. § 1226(c)(1)(E) issue.

Undeterred by such a response, the author of the traverse crafted pages of prose arguing why the Laken Riley Act must be addressed and why 8 U.S.C. § 1226(c)(1)(E) does not apply to the petitioner. To further those efforts, the author supplied extensive arguments as to why the reasoning in Lopez Cruz v. Jamison, No. 2:26cv2278-KSM, 2026 WL 1257329 (E.D. Pa. May 7, 2026) (Marston, J.) does not apply to the facts of this case. Notably, however, the court's show cause order did not reference Lopez Cruz, nor did the government's response. The author preemptively addressed a hypothetical counterargument to assertions that were never made in the first place.

The court shares the concerns of other federal courts regarding the above practices, which are blatant enough to warrant additional attention. See Duran v. Carris, 238 F.3d 1268, 1271–73 (10th Cir. 2001) (expressing concern about an attorney drafting pro se briefs without entering an appearance and signing

because it affords the pro se litigant with liberal construction of his pleadings while inappropriately shielding the attorney from responsibility and accountability for his actions); Ellis v. State of Maine, 448 F.2d 1325, 1328 (1st Cir. 1971) (same); United States v. Eleven Vehicles, 966 F. Supp. 361, 367 (E.D. Pa. 1997) ("Clearly, the party's representation to the Court that he is pro se is not true when the pleadings are being prepared by the lawyer. A lawyer should not silently acquiesce to such representation.").

The court also cannot rule out the possibility that the petitioner's submissions were drafted by non-attorneys using generative artificial intelligence, which raises additional unauthorized practice of law concerns. See Amaya v. Dir., USCIS, No. 8:25CV138, 2025 WL 1295330, at *2 (D. Neb. May 5, 2025) (noting an apparent "factory operation for 'ghost-written' pleadings" in pro se immigration-related matters); Patel v. Dir., USCIS, No. 8:25CV59, 2025 WL 1655294, at *2, n.3 (D. Neb. June 11, 2025) (identifying source of filings as a company formed to provide assistance to pro se litigants in immigration matters and expressing concern that non-attorney employees were preparing detailed responses to motions).[3]

[3] The court is also cognizant of issues addressed by the appellate courts due to the practice of law by "notarios" or "immigration consultants," who have been accused of preying on the immigrant community. See Ortega-Marroquin v. Holder, 640 F.3d 814, 816 (8th Cir. 2011); Morales Apolinar v. Mukasey, 514 F.3d 893, 897 (9th Cir. 2008); Omar v. Mukasey, 517 F.3d 647, 649 (2d Cir. 2008); Mewengkang v. Gonzales, 486 F.3d 737, 740 (1st Cir. 2007); Barroso v. Gonzales, 429 F.3d 1195, 1196 (9th Cir. 2005); see also Nezowy v. United States, 723 F.2d

However, a show cause order or other judicial inquest into these matters is not the proper course at this time. The lawyers and non-lawyers at the entity above and others operating in this space are placed on notice that future instances of the practices deployed in this matter will result in the court applying Rule 11 and, if warranted, measures beyond that.

Returning to the merits of Martins Ferreira's petition, Section 1226(a), not Section 1225(b)(2), applies to his detention, and his continued detention without a bond hearing violates his Fifth Amendment right to due process of law. Buele Morocho v. Warden Phila. FDC, 189 F.4th 287, 304–05 (3d Cir. 2026). And because § 1226(a) and its implementing regulations "require[ ]" a bond hearing, Borbot v. Warden Hudson Cnty. Corr. Facility, 906 F.3d 274, 278 (3d Cir. 2018), respondents are violating the petitioner's rights under the INA and its implementing regulations by not providing one.

As to petitioner's due process rights, like the Buele Morocho court, this court considers the Eldridge[4] factors to determine "whether detention without bond of noncitizens who have lived in the United States for extended periods of time with no criminal records violates due process." 189 F.4th at 306–07. As to

---

1120, 1122 (3d Cir. 1983) ("immigration consultant" charged criminally under 18 U.S.C. § 1422).

[4] Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

the first factor, "the private interest that will be affected by the official action," the Buele Morocho court held that "mandatory detention implicates [the] 'constitutionally protected interest in avoiding physical restraint.'" Id. at 306 (quoting Eldridge, 424 U.S. at 335; Kansas v. Hendricks, 521 U.S. 346, 356 (1997) (citations omitted)). And so, it does here.

The second factor concerns "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Id. at 306 (quoting Eldridge, 424 U.S. at 335). The Buele Morocho court found such risk exists in situations like here, because of "the absence of an opportunity for a neutral decisionmaker to assess" the dangerousness or flight risk of a defendant. Id. at 307.

As to the third factor, "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," id. at 306 (quoting Eldridge, 424 U.S. at 335), the court held that the "legitimate interest in preventing the release of dangerous noncitizens and those who might fail to appear at future hearings does not outweigh the other two factors here, particularly when [the] non-criminal individuals were detained absent evidence that either is dangerous or a flight risk, and the Government has not argued that bond hearings are unduly burdensome." Id. at 307 (citation modified).

Martins Ferreira's situation is somewhat different, because he was taken into custody by ICE after spending approximately eight months in the custody of the State of West Virginia on first degree robbery and conspiracy charges. And so, the government's interest in preventing the release of a potentially dangerous noncitizen is much weightier even in the absence of a conviction. This greater interest, however, does not outweigh the first two factors such that it defeats petitioner's right to a remedy. The court will fashion a remedy different from the release petitioner requests. The court will instead require the government to provide petitioner the bond hearing he is entitled to under the law. And because petitioner did not receive this bond hearing promptly, the court finds it appropriate to hold the government "to a higher burden of proof" at the court-ordered bond hearing. German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 214 (3d Cir. 2020).

For the reasons set forth above, it is hereby **ORDERED** that:

1) Bruno Martins Ferreira's petition for writ of habeas corpus, (Doc. 1), is **GRANTED** in part;

2) The government shall, **within 14 days**, provide Martins Ferreira with an individualized bond hearing before a neutral and impartial IJ;

3) At that hearing, the government will bear the burden of establishing by clear and convincing evidence that Martins Ferreira's continued detention is

necessary because he presents a flight risk or danger to the community if released;

4) On or before **November 6, 2026**, respondents shall file a declaration pursuant to 28 U.S.C. § 1746 confirming that Martins Ferreira has received a bond hearing;

5) The Clerk of Court is directed to enter judgment in accordance with this memorandum;

6) The Clerk of Court is directed to mail a copy of this memorandum order to Worldwide Legal Services, LLC at the address listed on the envelope containing Martins Ferreira's traverse; and

7) The Clerk of Court is directed to close this case.

**BY THE COURT:**

**Date:** 10/19/26

**JUDGE JULIA K. MUNLEY**
**United States District Court**